So we will move to the one case that we have on the argument calendar for today, number 20-1931, Revitalizing Auto Communities v. Lenox Industries. Mr. Littleton. Good morning, Your Honor, and may it please the Court. I'd like to reserve one minute for rebuttal. Five years ago, plaintiffs spent millions of dollars removing hazardous waste from people's backyards at a Superfund site, and CERCLA makes everyone responsible for that waste jointly and severally liable for our costs. But to recover costs for a removal action, which this arguably was, we had to sue within three years of finishing the work. We did, but after that limitations period had expired, the District Court dismissed our CERCLA claims as unripe on the ground that EPA must decide how future cleanups will proceed before we can sue. That leaves us without any way to recover what we already spent remedying an acute public health issue for which we allege defendants are jointly responsible. Let me ask you an out-of-the-ring question, and that is, at this point, what role does the bankruptcy court have in this? We think, Your Honor, the bankruptcy court has no role at this point. The bankruptcy court has jurisdiction to interpret provisions of the 2011 settlement agreement that arose out of General Motors bankruptcy, but we think that that settlement agreement is irrelevant to our claims and also irrelevant to the defenses. And so we don't think there's any role for the bankruptcy court at this point, and certainly not any role with respect to money that we've already spent. There's no way in which the bankruptcy court can somehow expand the amount of money in the trust to accommodate these past costs. We can only recover them from defendants through this litigation. So CERCLA supplies a remedy for parties in exactly this situation to encourage them to clean up the pollution now and sort out who pays in later litigation. The District Court upended that remedy by dismissing our claims nominally without prejudice, but effectively barring them on the merits thanks to statutes of limitations. We pleaded two CERCLA claims, one under Section 107 for cost recovery and one under Section 113 for contribution. The District Court's error on the Section 107 claim is clear on the face of its opinion. Compare the top of page 936 of the appendix, where the court correctly cites an affidavit we submitted for the proposition that we had spent millions of dollars, quote, cleaning and investigating, unquote, the expanded territory, to the bottom of page 947, where the District Court ignores the cleaning altogether and says that simply investigating doesn't trigger the statute of limitations for a Section 107 claim. But there's no mention there of the cleaning, which did trigger the limitations period. The court... Excuse me, Judge Lynch, I hate to interrupt as you're getting deeper into the Section 107 claims, but you did mention the Section 113 claims. Do I correctly read your brief at page 34 and following to essentially withdraw the appeal insofar as it relates to the Section 113 claims? No, Your Honor. So what happened? The District Court dismissed the 113 claim without prejudice. Would you say that's correct? Well, we say if the court thought... We ultimately agree, Your Honor, that we should proceed under Section 107 and that Section 113 is not available. But the reason we have to plead both claims is that we have to plead them in the alternative because there is an argument raised by certain defendants in the District Court that we had a Section 113 claim arising out of a 2015 consent order we entered into in the state of New York. And so if we tried to refile our Section 107 claim now with a Section 113 claim not having been resolved on the merits, then defendants will come in and argue that, oh, we should have proceeded under Section 113 and the statute of limitations for our Section 113 claim has now run. And so while ultimately we think that Section 107 is the proper source of our recovery, in order to plead them in the alternative. And the Section 113 claim would rely on the theory that the 2015 agreement or the 2011 agreement resolved your liability with respect to the expanded territory in addition to the rest of O2. Is that right? That's correct. Although exclusively with respect to the 2015 agreement. Because if it was the 2011 agreement that resolved our liability... The statute of limitations would have run. Exactly. But your position is that 113 doesn't apply because you have not resolved your liability with respect to the expanded territory. And so we should understand this as the sort of claim where you're just, where you would voluntarily undertake a cleanup effort and then proceed against other responsible parties under 107. Because there hasn't been a consent decree deciding your Precisely, Your Honor. And as a statute of limitations defense, the defendants argued that the 2011 agreement actually, and the district court, although ultimately dismissing our claim on prudential ripest grounds, seemed to buy this defense. But as we reiterated in our 28J letter filed earlier this week on the Guam case, the 2011 settlement explicitly did not release liability for pollution traveling from a former General Motors property to another location by means other than natural migration. So we allege that areas we've cleaned are not subject to the contribution protection granted by paragraph 105 of the 2011 settlement, and defendants would have to prove otherwise. The scope of the contribution claim is precisely defined by the terms of the instrument creating it, and the settling parties went out of their way in paragraphs 100 and 105 not to resolve all possible circular liability for pollution related to GM property. So while we ultimately agree with the district court that our section 113 claims founders for other reasons, because we don't think the 2015 consent order didn't resolve anyone's circular liability, the proper remedy would be on remand for the district court to reject our section 113 claim on the merits and clear the way for our section 107 cost recovery claim to proceed. Now can I ask, so if there, I think you don't disagree with the general proposition that you can't pursue a 107 claim and a 113 claim simultaneously, right? That's correct, and this is sort of right. And you think you need to proceed under 107 because you don't have a 113 claim, but if we're under the situation where it looks like there will be a 113 claim because it seems that there is the expectation that there will be another consent decree with respect to this property with the EPA or the state agency, what does a court, what should a court do with that until there actually is that claim you're allowed to proceed under 107, even if that means that that's how you receive recovery and 113 then would never be available even once there's a consent decree. Is that how it would work? Well, I don't think, I mean, I think even in this, your honor is, is hypothesizing that still wouldn't, if any 113 claim that arose out of a future consent order we would enter into with the current lead agency for the site, which is US EPA, it's still, I don't think there would be a credible argument that we could recover our past costs that we've already incurred for cleanup using under, under that section 113 theory. So I think our section 113. Oh, I see. So you would rely on 107 for all expenditures you made up until the point of the cleanup of the consent decree and then 113 going forward. And that's because 107 is always a reimbursement for expenses that are, that are outlaid in general, right? That's right. And if I could just take a moment before, before I yield the balance of my time for I just want to explain, there's been some confusion about how we ended up in this situation, given the purposes of the trust. And I just want to take a few moments just to explain what happened. So we have the 2011 agreement, which provides for the trust to enter into consent orders with the lead agency, which during the relevant time period was New York. And the consent orders are supposed to put the meat on the bones of the 2011 agreement by specifying how the trust will conduct cleanup. And so the trust governing documents authorized and state law, excuse me, requires the trust to comply with a consent orders terms. And so in 2015, we signed the consent order with the state that among other things required us to investigate whether, and to what extent hazardous waste was present on this Creek, well downstream of the GM plant. And we agreed to do that because it was possible that some, some GM waste could have naturally migrated to these areas, thus bringing them within the scope of the 2011 agreement. So we started that study in 2016, and almost immediately discovered a major health hazard, which was a hotspot of PCB pollution in the Brookline road neighborhood, which is almost two miles downstream and on the opposite side of the Creek from the GM plant. So we had young kids playing in the back or in these heavily contaminated backyards. And the state said, whatever the 2011 agreement said, they pointed to language in the 2015 consent order saying that made us responsible for the cleanup, regardless of whether GM waste had naturally migrated to Brookline road. So we disagreed ultimately that the 2015 consent order made us responsible, but we, we had two choices. We could gamble that we were right, put down our shovels, and we could try to sue New York for a declaratory judgment that the But if we did that, we'd risk violating the order and paying civil penalties to New York, in addition to the original cleanup costs. Meanwhile, the site would just remain in this area undealt with. Alternatively, and this is the path we chose, we could acquiesce in the state's reading of the 2015 order and do the removal, then recover costs from the defendants, regardless of what the 2015 order meant, either under section 107 or section 113, as we talked about earlier. And we chose the latter path, acting in good faith and consistent with the trust purposes. But then the district court, by dismissing our claims, upended everything because now we have no possible route of recovery, potentially, if this is qualified, qualifies as a Well, that's sort of, that's sort of interesting. So then your position is that there is not a consent decree requiring you to do this cleanup effort. And if you are right, then maybe you can under 107, but you're proceeding under the assumption that there is a consent decree that requires you to do that. And if that theory is right, then I think you'd agree, you have to proceed under 113 and the 107. And we have that claim. Right. Right. And we have that claim. The district court appeared to think that we didn't, couldn't proceed under 113. And we're fine with that. We'll proceed under section 107, but we needed to protect our rights either way. Okay, but so there's the district court, you know, said a lot of things about, you know, that you seem to be in haste and you should have contested it with the EPA and the state agency. But just to clarify, you don't intend, even though your position is that it's not required by the prior order, you are not planning to contest it with the bankruptcy court or with any other court and you're going to proceed as if you are required to do this is that right? So with respect to what we're doing in the future, so we're finishing the investigation that I mentioned earlier, which found this PCB hotspot. But in terms of future, I mean, what, what's, what the EPA is now suggesting is that, you know, there's maybe tens of millions of dollars of, of further work that needs to be done. Now, we don't think we can spend that kind of money consistent with our other cleanup responsibilities. And so if we're put back in the situation again, that we were in 2016, you know, we may ultimately have to, and if, if for some reason, our claims are not reinstated here and we're left out of luck, we're going to have to, we're going to have to fight it out with EPA about those future costs. But the past costs is really the core of why we're here. And the district court erred in saying that to recover those past costs, the case had to be dismissed as potentially unrighteous. The past costs are the ones, are the ones for the, for the testing of the expanded territory. Is that right? And cleanup, your honor. And that's, and this is the case. And the cleanup you've done so far, but I mean, is your, I mean, you haven't completed cleanup of that area, right? Correct. Correct. Right. So what would your plan, what would your plan be? Should it bring another 107 twain after you um, uh, you expand additional monies to do cleanup in that area? I mean, is this like a series of 107 claims? No, your honor. Once, so what, so what section 107 provides, and this is actually, it's actually, even though it relates to a section 107 claim, this is a section 113 G2 of CERCLA, which talks about, um, both statute limitations and what the district court's required to do in these actions. So in addition to, um, uh, allocating past costs, once we're in the door for those past costs, CERCLA leaves the district court with no discretion, but to declare the liability of parties for future response costs. And so it, because we're, we're in the door because of the past costs, but once the court does has to allocate those past costs, we think that the future costs must be allocated for purposes of declaratory relief, um, as part of, uh, as part of the district court's resolution of our section 107 claim. But as we just said, you might have, there might be a consent decree that comes into play later on. And so that might, that declaratory relief, uh, constrain the scope of the consent decree. Would the government be down by that or, uh, or would it cancel the declaratory relief that otherwise would apply? Or how, what's the interaction between a future consent decree and that kind of relief that you're discussing? So with respect to the future relief, and again, we think, you know, the past relief sort of, as I said, deals with the, deals with the ripeness issue and resolves it. With respect to the future relief, if it came to pass, your honor is suggesting where there's some future consent order negotiated with EPA, then that might affect the district court's declaratory judgment of liability. Um, but as, as EPA has said, they're also, they're in very early stages of trying to figure out what to do about other potentially responsible parties here. I mean, the site has been on the national priorities list for 27 years. And so, you know, Congress clearly envisioned in CERCLA that, look, EPA can go after parties and sue under section 107. But if EPA doesn't, then private parties do that. And the court is ultimately charged with resolving the liability one way or the other. So, um, you know, however, however things shake out in the future, the point is we have a right claim now. And if this court affirms, we lose that right claim indefinitely, or excuse me. May I ask a couple of, I don't know if they're technical questions, but, uh, suppose, uh, I agreed with you that, um, uh, the district court should not have dismissed this claim as a premature, uh, let's say hypothetically, because, uh, this prejudices you for essentially the reasons you've been discussing that it puts you in an impossible position. Uh, uh, so suppose hypothetically that I agreed with that. Uh, it's not clear to me that there's anything else that we need to do. And this is what I want you to help me out on. Uh, uh, for example, uh, this rule 17 real party and interest issue, uh, does that matter as a practical matter? I mean, is there any reason why if this case gets remanded, Epplet can't won't shouldn't join as a party plaintiff and solve that problem? No reason you're all whatever or whatsoever, your Honor. I mean, the lack of capacity can't independently support the dismissal of our complaint as the district court acknowledged. It just means we should be granted leave to amend. The trustee stands ready and willing to join the litigation on remand. If that's required, this court does not need to address that issue. And if the court simply says, yes, that answers that question. Uh, and now the second is the, uh, the section one 13, uh, issue. Uh, uh, I'm, I'm still puzzled at the fact that the district court dismissed that without prejudice, uh, for whatever reason it did it. Uh, and you agree that, uh, that it was correct to, to dismiss there'll be a possibly for a different reason, uh, without prejudice. Uh, uh, I, I think I understood your answer before about what other people might claim in the future and so on. Uh, but I guess I'm puzzled as to whether we would even have jurisdiction to pursue what seems to me like a, an advisory opinion about what might happen. Uh, these claims having been dismissed properly without prejudice, if you attempt to reinstate them at some future point, uh, why can you help me out? If we just send back the case saying that the dismissal as premature was, was incorrect, uh, and, uh, effectively, uh, dismissed the appeal in so far as it relates to section one 13 as a mood, uh, did something bad happen? I mean, is there some reason why we should be addressing this section one 13 claim that is not addressing a hypothetical future situation that may or may not ever happen? Well, if the section one, so as it stands right now, as you noted, your honor, the district court dismissed, did not resolve the claim on the dismissed, uh, without prejudice. And it is also unclear to me why that was, it seems like the natural outcome of the district court's reasoning was that the claim should have been, uh, dismissed on the merits, but the district court dismissed it without prejudice. So if, if we go back, if this court dismisses the appeal on that claim, the problem is we go back and we only have a section one of seven claim. And then the defendant, some of the defendants have already made the argument, um, that, you know, we had to proceed under section one 13, there will be no resolution of that issue on the merits for race to Dakota purposes. And so in a future case, this, this court might ultimately disagree with the district court on that question, right? If it came to the, on the section one, but isn't that something that would be resolved then? Uh, in other words, uh, if the case, uh, if you're in agreement that these claims are properly dismissed without prejudice, that is the right thing to do here. And now, uh, without our saying endorsing one way or the other, the district court's reasoning, just everyone agrees, or at least we'll hear if the other side agrees, these claims are properly dismissed without prejudice. There's nothing to fight about now. Maybe at some future point, something will happen. And if that happens, uh, then maybe there will be litigation and the district court will decide it one way or the other. And then you get to appeal that at that point, if that ever happens, but I'm still having trouble understanding how we can sort of hypothetically resolve that by addressing questions of the everyone agrees is premature and should be dismissed without prejudice. So we don't agree that it should be dismissed without prejudice. I, and I apologize if there's confusion on that point. We do, we do not agree with that because the problem is that effectively a dismissal without prejudice is a dismissal with prejudice because if we tried to refile that claim, it would clearly unambiguously be time-barred. So, if you said you agreed a moment ago that if you have a one 13 claim, you would not have a one Oh seven claim because you can't proceed under both of them at the same time. So if we were to conclude that you had a one Oh seven claim, wouldn't we first have to conclude that you do not have a one 13 claim? Right. And to be clear, right. I mean, if this court actually addressed that issue and said, why should it be without prejudice? So if we think that there isn't a consent decree that covers this, meaning you're not eligible under one 13, then that is just a failure to state a claim. Is it not? Right. And it would be with, if there were, if there were a new agreement, then you could reassert a new claim at that point, but that would be a different claim because the circumstances would change. But at this point, it sounds like you're agreeing that you have failed to state a claim under one 13. We agree with that, your honor. And if this court makes that clear, then we have no problem just proceeding with under section one Oh seven. So long as it's clear and we're not going to face a situation where we were going back and we're just on one Oh seven. And then suddenly somebody is making an argument. Oh no, you should have brought a one 13 claim. We just want to make sure that the dismissal without prejudice doesn't operate to move a race to Dakota defense that we would have. Well, can we, can we, can we decide that on this record? So the district court, um, didn't resolve whether you really had a one 13. Well, I guess it did. I don't know. Well, actually you tell me, did the district court resolve the question as to whether, uh, the cleanup here was pursuant to a consent decree such that you would have a one 13 claim or was it agnostic on that point? You know, it's reasoning seemed to do that, but then at the bottom, at the end of the day, this court, this court on appeals reviewing a judgment and the judgment with respect to that claim was dismissal without prejudice. And so I don't think ultimately the district court did resolve that issue, at least in a way that would give rise to issue preclusion. Um, well, he did say that there was no predicate, there was no predicate, uh, consent decree, and therefore there was the failure state of claim, right? Then he says dismissal without prejudice, but maybe, maybe that's not right. Maybe it should have been with prejudice. It sounds like you agree with that. Yeah, I think to your honor, I would suggest that this court obviously can one way or the other. We just want to make sure that that issue is resolved with the risk, with the effect of having issue preclusion so that it's clear going forward that we're proceeding under section 107 and that we shouldn't have proceeded under section 113 because we did not have a viable claim there. I'm still puzzled as to how we can do that. Uh, on let's revert to the section 107 claim for a moment. Uh, the district court, uh, dismissed that, I guess, also without prejudice, uh, on grounds that it was not prudentially right, uh, because it too is premature, right? That's what the district court did. Correct. We disagree with that for reasons I've stated. I understand. Right. That's what I didn't ask. What do you agree with? I know you didn't agree with it. That's why you're here. Uh, it's just a question of what did the district court do now? The district court dismissed the claim as premature. That's what is before us. Uh, we might agree with you. Uh, if we did, we would normally say, uh, district court is wrong, not premature. Uh, you have jurisdiction, you should exercise it. Now go back and deal with the merits, right? Uh, but you want us to tell the district court, it sounds like that your section 107 claim is valid on the merits and your section 113 claim is not valid on the merits, neither of which are issues that the district court has resolved. So, so I, I apologize. I mean, we're, we're sort of talking about the scenarios and I don't want to give the impression that we're asking, uh, this court to do anything other than reverse the, um, the judgment with respect to all claims and remand for the district court to sort out the issues on the merits. So I want to make clear that, you know, we recognize, I mean, there's been no cross appeal here. So this court would probably lack jurisdiction to actually convert a dismissal without prejudice to a dismissal with prejudice on the merits with respect to any claim. Um, and so the appropriate, the appropriate course for this court is to reverse the judgment, remand, um, remand for the district court to exercise its jurisdiction on all claims. How the district court's going to exercise that jurisdiction is obviously, you know, going to be up to the district court on remand, but I, I apologize if, um, if I've been sort of tying the cord of knots here, just trying to deal with all the hypotheticals and reasoning. No, I don't for a moment suggest that you're at fault and you're tying the court into knots. Uh, it may be that it's just inherent in this complicated circle of scenario, uh, and maybe complicated by what the district court did. Uh, but again, I'm just trying to sort out because I don't think I've ever seen a, an appellant's brief, uh, that, uh, uh, you know, has a point that starts out the district court was correct to dismiss these claims, uh, without prejudice, uh, and, and then goes on in some other direction. And, and, you know, this is, uh, perhaps entirely appropriate in these circumstances. I think I understand what you're asking us to, uh, but, um, you know, that may be just inherent in the problems that face us. So, so no, no criticism implied at all. Can I ask about the one acre of OT that is also part of the expanded territory? So wouldn't the issue be different as to whether there was a consent decree that covered responsibility for that, uh, part of the land, because you agree that you have consent decree covering OU2, right? So with respect to the, this is the 2011 settlement, your honor, you're saying that we agree with, so... Sure, 2011 or the 2015. I'm just asking whether the issue is different with respect to the one acre. Well, that's, that's going to be a factual question, your honor, depending on what's defined, the scope of what's defined as a and operable unit two and the expanded territory are all separate facilities. This is, I mean, we're at the pleading stage. So I, to, to your, to answer your question, yes, the situation could be different. The district court could draw that line and make, reach a different conclusion with respect to the viability of our claims there, but that's all, you know, a factual, factual issue that needs to be resolved on remand. Okay. All right. Unless there are other questions, you reserved a minute for a bit, so we'll hear from you again, unless there are other questions from my colleagues, let's turn to the appellee. First, we'll hear from Mr. Weigel. Good morning, your honors. Robert Weigel for Lockheed Martin Corporation. I will address the issue of prudential rightness and if it pleases the court, Kristen Rowe for General Electric Company, we'll address the capacity issue and other issues in this appeal. The district court properly held Vasey Circle claims unripe under this court's prudential rightness precedent. As this court has explained, prudential rightness is a tool that courts may use to avoid becoming embroiled in adjudications that may later turn out to be unnecessary. As the court said in the American Savings Bank case, the focus of the prudential rightness inquiry is whether the plaintiff's claims would be better heard now or at some future point. The prudential rightness issues here arise chiefly from the fact that RACER is not a typical Circle plaintiff. It was created and funded with a finite amount of GM money and settlement of GM's environmental liability for the exclusive purpose of cleaning up 89 specifically defined sites. RACER is authorized to do only what it is obligated to do under the bankruptcy court settlement agreement and consent decree, which funds RACER, EPA, and New York, as well as 13 other states. In other words, RACER is authorized to perform only particular activities at particular sites capped at specific monetary amounts. So, excuse me, excuse me, Mr. Weigel. This raises a question that puzzled me all along about the case. It's said along the way that RACER has actually already overspent that amount. You say, and it seemed to me from the documents, it was only given a certain amount of money to spend. How can that be? Your Honor, I don't know the answer to that question. I agree with your reading of the RACER seems to say that it's already spent several million more on OU2 and the expansion site than was budgeted for OU2. And I think that is the central problem here is that RACER is proposing to spend 90 million or so more dollars that it doesn't have and that based on its own pleading, it's not authorized to spend. And it's not authorized to spend it for at least two reasons. One, RACER very clearly and repeatedly alleges that the expansion site is outside the scope of the agreement. And by the agreement, I mean the 2011 agreement that created RACER and is the exclusive source of both its authority and funding. But even if the court were to assume that the expansion site, contrary to RACER's own allegations, is within the scope of the agreement. In other words, it's somehow sufficiently related to one of the 89 properties at issue. The agreement is also crystal clear that where there are proposed expenditures that would exceed the budget amounts for a particular site, those expenditures, and in particular, we draw on the cushion fund, which is applicable to all the sites. And paragraph 55 of the 2011 agreement makes clear that the government claimants agreed to settle those claims in reliance on the year is to spend the entirety of the cushion fund for all 89 sites on a different site, on a 90th site. How much does your argument depend on the unique characteristics of RACER? So if there were no trust, if there was just GM as a corporate entity, and it decided to clean up the expansion territory, and then it proceeded under 107 to seek reimbursement from other responsible parties, do you dispute that it would be allowed to do that? I think we would not have the same prudential rightness issues, your honor. That's for sure. I mean, if RACER were a typical going concern company or an actual person, then I agree with your honor's suggestion that the circle allows volunteers, as it were, to clean up sites, and then 207. But what we have here, and it is the uniqueness of this case, and it's why the prudential rightness issues arose, is an entity that is limited in its authority. And the real oddity here is that the entity has come into the district court and expressly and affirmatively pledged, effectively, we do not have authority to do that. Can I ask why that matters for our resolution of this appeal? So if, in fact, RACER is exceeding its own authorities based on its creation documents, its constitutive documents, isn't that a separate question as to whether it's allowed to do what it's doing? And why should we look at it as if RACER were acting as you acknowledge GM would be allowed to act as just an entity that is engaging in cleanup efforts and therefore can proceed under 107? Why should we be enforcing the charter of RACER? Well, it's a separate question in the sense that it doesn't speak to whether the bare bones elements of a circle claim has been pledged, your honor. I agree with you there. But it's absolutely crucial to the prudential rightness issue, because the chief concern, or at least one of the chief concerns of the prudential rightness doctrine, is that the court not adjudicate claims that, if it were to wait, it may not have to adjudicate, or at least might be presenting a much simpler and smaller form. And that's the case here, because if the bankruptcy court rules as RACER's own allegations suggest that it should, that it does not have authority to spend this $90 million, because it's not within the scope of the agreement. We just asked RACER's counsel whether, I mean, it doesn't seem like anybody intends to go to the bank to act under the presumption that it's obliged to do this cleanup, and it's undertaking the cleanup. I mean, we can't order somebody to go to the bankruptcy court, can we? So why do we know that that's going to happen, and that such a ruling might ever occur? Well, your honor, I think the question of prudential rightness is whether there is a substantial likelihood that it might be happening, that there might be contingent events that obviate the need to adjudicate the claims now. And I think that that... Mr. Weigel, excuse me, I read your brief not to be saying that they should go back to the bankruptcy court, but that they should be resisting any move by New York or the EPA to make them do this cleanup. I think those are the same thing, essentially, your honor. In other words, the bankruptcy court documents give to the bankruptcy court exclusive jurisdiction over funding disputes, and I think RACER's counsel conceded that. But now, let me press back on this. You say that all they're allowed to do is to clean up certain very specific sites, but doesn't the trust, and I could be completely wrong about this, but it is the way I read the brief, doesn't the trust also leave them in charge of the plant and with the authority to sell it off or see if it can be made viable or do various other things? It does have the authority to clean up and the obligation to clean up the plant, and I believe to try to sell it if it can, your honor, yes. Yeah, but not only to do the cleanup, it owns this place that is the very place that is the source of GM's liability, right? It's not the expansion site, your honor, but the OU1 and OU2, which RACER repeatedly states and emphasizes and stipulates is not part of that site. It's a separate site, and really, they couldn't be any more clear. They specifically say on page 34 of their initial brief, the expansion site is not contemplated in the 2011 settlement agreement. Well, I'm sure, Mr. Weigel, that they would like it if a court were to say, although I think this might have to be done in a litigation in which there are parties that are present in this litigation, that they have no responsibility whatsoever, and I'm sure that is something that they think would be a good thing to have happen. At the same time, the issue is whether a party will be prejudiced, right? And if the district court does not adjudicate something or other now, if it dismisses this case, will that prejudice them? And I read your briefs as saying they're better off taking a different strategy with respect to the dilemma that Mr. Littleton has sort of set out than the one that they have chosen to do, and I think that's very nice of you to point out a possible strategy that would be good for them, but why should we accept your view of what's better for them rather than their view that if we dismiss this case, they are in a position where, yeah, they can litigate against EPA and make the arguments that you say are good and that they might even agree with on the merits, but maybe a court will not, and then they're kind of royally screwed at the end of the day because they will no longer be able to pursue these claims for contribution, and they will be stuck doing these things that you and they, at least for purposes of this litigation, would like to think they don't have to do. Why isn't that prejudice to them? There's two parts to that question, I think. There's the hardship prejudice part, and I'll address that, but I also, in doing that, I want to also address the earlier question of, given that RACER says it doesn't presently intend to go to a bankruptcy court, why is the scenario we envision where there's a ruling that RACER would never authorize to spend the money a realistic one? And I think that there are at least three reasons why that's true. First, RACER, if I understood Mr. Littleton, pointedly did not forswear raising the bankruptcy court defenses down the line, and indeed, as the court has pointed out, RACER says it's already exceeded its funding for OU2. It's difficult to see how it's going to be able to spend money on litigation that it doesn't have while incurring tens of millions of dollars on remediating a site that it doesn't have without having to go to the bankruptcy court and ask for the funding, ask for a reallocation of the budget for that. It would be cool to be presented with that question in that scenario, but even if it somehow... Excuse me, but why should this court adjudicate all that stuff? Why should the district court be speculating about all of these potential possibilities? It sounds to me as if the problem is that RACER has a lot of complicated, conflicting obligations. They've chosen to bring this litigation as one way of resolving some of those issues. Maybe they could have done something else. Maybe eventually they will do something else. Maybe they'll someday have to do something else. But why should we be speculating about all that rather than saying there's a case here that the district court has jurisdiction of. There are real issues as to if they do proceed or have already proceeded to do certain cleanup actions that they are entitled to get somebody else to contribute to that. If we dismiss that, maybe they lose that possibility as things go further ahead. So why isn't the district court just supposed to address the case that it's got before it? Well, your honor, I think it did. And the answer to your question respectfully is that the doctrine of prudential richness says that this court has said it is an important exception to the usual rule that district courts should exercise jurisdiction when they possess it. And it is designed for circumstances just like this, where if the case proceeds and the claims are adjudicated now, there's a significant risk that we're going to end up in a scenario down the road. And this is what everyone I think also wants to avoid where the district court has spent years and the parties have spent millions of dollars of resources litigating fair court claims that it turns out didn't ever need to be litigated because of a bankruptcy court ruling that says, Ray, sir, you're right. You don't have authority. You never had authority to incur these costs. And I think the bankruptcy court, excuse me, the district court sensibly, very sensibly said that it will serve everyone's interest, including waiters better to get that ruling from the bankruptcy court now. And then either way, Ray, sir, will have clarity and it will not be in the complex. So let's let's let me discuss that. I appreciate that point. So million in total that they say they intend to spend and the amount that they say they've already spent, which my reading of every day, they identify three point five million for cleanup of the book line road neighborhood, which is the only not specific to the expansion site, as opposed to the only two or some combination of the two. Now, I think even if we assume that after the bankruptcy court enters, whatever ruling is going to rule to enter, that nature would then be able to come back and prosecute circle claims for that amount on the assumption that the bankruptcy court agrees with race or that it's not authorized to mediate the expansion site. That's a very different case. I mean, it's a much smaller case. We're dealing potentially with a subset of an area of the expansion site. And it's frankly a case that's much more likely to settle that difference in itself in sufficient justification for application of the doctrine of prudential rightness. It doesn't require that the claims be completely obviated as adjudication. Do you agree? Do you agree with Mr. Wilson that if you were to pursue the one oh seven claim for the money that was already spent, it would include a declaratory relief that the other responsible parties were responsible for expenditures going forward? Should they occur? And why wouldn't that be a better way to resolve it? Because then if it doesn't occur because the bankruptcy court puts a stop to it, then you don't incur future liabilities. But if the bankruptcy court never gets involved or decides that racer is authorized to undertake these cleanup efforts, then we would have resolved the liability. And so then there wouldn't be the waste of judicial resources that you're talking about. Well, Your Honor, I think, again, if we go ahead with the adjudication of the circle claims now, then we are at risk of spending years and resources on claims that wouldn't need to be adjudicated. I think you just said that it would be appropriate to have an adjudication of the one oh seven claim with respect to the money already spent. No, no. Because you said there's a smaller amount of money and it is manageable. No, Your Honor, I didn't mean to that they would be able to pursue that circle claim at the end of the day. It would still justify application of the doctrine of prudential rightness and waiting because of the difference between a three point five million and a ninety three million dollar claim. But I think, you know, if the bankruptcy court were to rule again, as racer suggested, that it is unauthorized to spend. But then you're saying the prudential rightness is because the litigation dynamics of resolving a three point five million dollar claim and resolving a ninety million dollar claim are very different. But prudential rightness, as you said a moment ago, is an exception to a general rule. And it's really only used in extraordinary circumstances when there's something that's going to result litigation. The idea that a settlement is more possible under certain circumstances versus other circumstances, it doesn't seem. I mean, would it be appropriate for a district court just to say, you know, I'm going to wait to decide a question that's within my jurisdiction because I think the settlement pressure will be different under different circumstances. Would that be a proper application of the prudential rightness doctrine? Your Honor, I don't think we're just talking about settlement dynamics because, again, you know, I mean, what Rachel has told us is that it cleaned up the Brookline neighborhood. That's a very small portion of the entire expansion site. So we don't even know. I mean, if we're only talking about the three point five million, that could be a very different factually than if we're talking about the ninety three point five million. But I also think in the scenario that we're contemplating, the bankruptcy court will have rules essentially that racer committed an unauthorized transfer of bankruptcy court assets and racer seems to have alleged, at least at one point in their briefing, they suggested they did so because the government required them to do it. Now they seem to be saying they did it voluntarily. But either way, the bankruptcy court may well decide that there are either out of the government or out of the trustee. So then just to clarify the future event that you think will occur that will obviate the need for the litigation now, it's that even if racer does not intend to go to the bankruptcy court to contest their obligation to pay for this cleanup, they would have to go back to the bankruptcy court to get additional funding to bankruptcy court would say whether racer was even authorized to do the additional cleanup. Is that right? Yes, you would need. Well, that's one scenario, Your Honor. And then, as I said, even if the claims are adjudicated, if racer, let's say racer gets a favorable outcome and the district court says, well, you're only responsible for 50 percent of the cleanup costs here. We think some or all the defendants bear the other 50 percent responsibility. That's still forty five million dollars that racer doesn't have. I don't see how it would not have to raise its defenses to the bankruptcy court at that juncture. And then again, we have the risk of a ruling, a very real probability of a ruling that would obviate the circle claims ever needing to be adjudicated. There's just one more scenario I want to highlight here, which, as I mentioned, what we are proposing to do is spend more than the entirety of the pushing funding for the entire site. So it is completely conceivable that one of the other signatories to the agreement that based on the plain language of the agreement is relying on the availability of those funds and may well have, with respect to a site that is within the scope of the agreement, additional remediation costs that were unforeseeable, unlike racer's allegations regarding the expansion site costs here, and that it will raise the issue with the bankruptcy court because it would be directly prejudiced by what racer is proposing to do here. And I think that's the other important interest here, that racer is pressing ahead as it proposes to do without a bankruptcy court resolution of the question of authority that racer has itself raised directly threatens the integrity of a $600 million resolution of environmental liability with respect to 89 different sites around the country. Wouldn't somebody else then be entitled perhaps to intervene in this proceeding or to sue in the bankruptcy court if somebody else agrees with you that they are prejudiced? This is not an argument about you being prejudiced. This is an argument about other people being prejudiced, right? Your Honor, this is an argument as to why there's a substantial likelihood that the bankruptcy court is going to issue a ruling that racer was never authorized to incur the cost that it's seeking to recover in the circle litigation, and therefore, why there is a contingent event exactly of the sort that this court has said is a proper predicate for the prudential rightness doctrine. And this is, quite frankly, if the prudential rightness doctrine didn't exist already, it would have to be created to deal with this case. This is exactly the scenario in which racer says, well, we've satisfied the essential elements of a circle claim, but as the district court pointed out, it simply did not make sense to adjudicate that claim now, when by waiting, we would have clarity, we could obviate adjudication of a claim. And if racer was been depressed to circle claims, they could do so without entangling themselves in contradictory arguments, as we've seen in this briefing, without threatening the integrity of a $600 million bankruptcy agreement, and without the prospect of wasting years and substantial money of judicial and party resources on litigating claims that may never need to be adjudicated. Do you agree with the district court that there's constitutional rightness? You don't dispute that there's a case of controversy here, right? We did dispute that below. And I think certainly with respect to the money that racer says that hasn't been incurred yet, I think there are substantial arguments along the line. So we appreciate that the district court ruled against us. And we're here to defend the prudential rightness ruling. You referred to what might happen in bankruptcy court. I take it that's in a proceeding that has not been initiated by anybody? Yes. As far as we're aware, that's true, Your Honor. So you're anticipating that it would be? Yes, we are. And part of because of what racer itself has said about its lack of authority. But this case is very unique. And it's certainly a very unique circle case for the reasons that I set out. But the kinds of concerns that are present here are the kinds of concerns that are typical of prudential rightness cases in the sense that we've got an alternative avenue of relief here that hasn't played out. And that is a typical kind of fact pattern for prudential rightness, where you have another avenue of relief that hasn't been exhausted. That would certainly be more simple and straightforward to resolve than circle claims against dozens of defendants regarding alleged activities that transpired decades ago. And we don't believe that there is any real prejudice to racer here. And I know the court has raised that concern. So I'd like to address that as well. But I think that the real prejudice that racer purports to identify is a statute of limitations prejudice. And they seem to point to recent cleanup activities that they did. And they seem to suggest that, well, if those were construed as removal actions under a three-year statute of limitations, and they might be at risk if they have to go to bankruptcy court first of having that statute run. There are a few problems with that argument. First, there's absolutely nothing in the record that racer has introduced from which a court could conclude that these are removal actions. And if they're not, if they're remedial actions or they don't fall in the category, there's really not any statute of limitations dangers. The second thing is racer hasn't explained why it couldn't resolve the bankruptcy court defenses. And then in time to sue under the statute of limitations, I think racer is a bit of an architect of its own angst here in that it decided to press this appeal and not go to the bankruptcy court in the face of the district court ruling. But the third thing I would say is even if there were a basis in the record to conclude that there is potential statute of limitations prejudice, which again, there's none, the court could, I think, appropriately address that by remanding the case with instructions for the district court to stay the proceeding pending the resolution of the bankruptcy court issues. And that would protect racer against any even conceivable theoretical statute of limitations prejudice while avoiding the host of ills that the bankruptcy court, excuse me, the district court identified and that I've discussed with the court this morning. Again, I think what the- Excuse me, Mr. Weigel, does that not assume an answer to a question that Judge Menasci asked earlier or something you said earlier? Do we have the authority effectively to force them to go to the bankruptcy court? Because that's, they have, you know, it's one thing if they're in the bankruptcy court and you're asking that the district court stay this action pending the outcome of the bankruptcy court. But if you're asking, this proposal is that we remand with instructions to the district court to stay this action pending something that has not happened. And thus effectively to say that the racer must go to the bankruptcy court before anything else can happen. We're not suggesting that the court, you know, can or should issue some sort of authority. And I think, I don't think there should be a controversial proposition to say this case is unripe and it will remain unripe unless and until there is a resolution by the bankruptcy court of the authority issues that racer itself has raised. And then racer can guide itself accordingly. I think the problem with the alternative view here is if it were correct, then these other cases I've mentioned where courts have found claims prudentially unripe because of unexhausted avenues of relief. The plaintiff in those cases could simply say voluntarily, well, we're going to not pursue that avenue of relief, or we're going to stop pursuing that avenue of relief. We're not going to pursue it to completion and force the court's hands. And I think the doctrine of prudential rightness, it is- Well, if that party that's not pursuing some avenue of relief, if it's within their rights not to pursue the avenue of relief, if they have a choice under the law as to what relief to pursue, why would a court be entitled to tell them you have to pursue this litigation strategy rather than that one? I mean, is there any- You're saying the only reason racers are going to have to go back to the bankruptcy court is because of this circumstance that they might need additional funding. But for that, they'd be under no- I don't know if that's true. I guess maybe we'll hear from Mr. Littleton about that. But for that qualification, they're under no obligation to go to the bankruptcy court. If they wanted to just cooperate with the EPA and do the cleanup, they would be allowed to do that if they had the authority to spend the money, wouldn't they? Well, the other possibility, Your Honor, is that EPA is not going to require them to do the work that they say they're seeking to recover must. I mean, that would be the other component of the prudential rightness rule. But they're doing it, right? I think you agreed with me earlier that apart from the idiosyncrasies of racer as an entity, if this were just GM doing it, they could voluntarily undertake this cleanup effort and they would have a claim under 107. So if they've decided not to fight with the EPA over this question and to engage in the cleanup voluntarily, why would we forbid them from doing this? Well, Your Honor, I think Your Honor asked about racer's obligation. I respectfully submit racer is obligated under the bankruptcy court documents to raise this issue with the bankruptcy court because it is obligated to be a steward of the funds it is giving and to spend them only in the ways authorized by the agreement. So I'm not standing to sue under the bankruptcy court, but I am arguing that it's certainly appropriate for the district court to consider and for this court to consider under the doctrine of prudential rightness the fact that racer on its own allegations. I mean, can you sue to enforce racer's own internal obligations? I mean, shouldn't GM or whoever the source of the funds is bring some kind of claim about whether they're acting as the appropriate steward of the funding? I think probably GM could. I think certainly the other signatories to the agreement such as the states could, Your Honor. Again, I'm not contending that we have standing to raise an issue in the bankruptcy court. I'm saying that the prospect, the very real prospect, that that issue will be presented to the bankruptcy court through a number of other... But no one has, Mr. Weigel. I mean, you're saying that all these other parties are potentially prejudiced and the trustee here may be violating his obligations or its obligations, I guess, under the agreement and therefore it's all going to wind up in the bankruptcy court. None of that has happened. I think racer's problem is perhaps that it could happen. There are lots of different stakeholders here. There are those people whose backyards are polluted. There are the environmental authorities of New York and the United States. There's you guys. There are all kinds of parties and it may be impossible to get them all into the same court at the same time or maybe it is. It's a complicated situation. Somebody's got to go first. They've chosen this strategy and it seems to me that there's a very real possibility that if this is not allowed to go forward, they will be forced to pursue a different strategy, which it doesn't seem to me that it's up to us to decide that. It doesn't prejudice them to deprive them of their chosen strategy because we think that somehow it would be better for them or for other people or for efficient adjudication or whatever for them to do that rather than this. That just seems to me to be a rather peculiar proposition. Well, your honor, I think that in a nutshell, the doctrine of prudential rightness does stand for the proposition as a court to the American Savings Bank. Yes, it may be a very important doctrine in an appropriate case, but it's also one that it seems to me has to be exercised with, as the name suggests, some prudence and it is an exception to the obligation of a court to and one should be very careful about doing it in ways that could conceivably prejudice a party. And you don't disagree with those propositions, right? I agree with those general propositions and our position is that there isn't any significant hardship to race or certainly that any such hardship can be obviated and the prejudice to proceeding in the sequence that I take your honors point that we don't know to a certainty that these issues will be resolved by the bankruptcy court. But of course, if we knew to a certainty that the bankruptcy court would hold that the claims were unauthorized, then the doctrine of prudential rightness would say dismiss them with prejudice. It says dismiss them without prejudice because we don't know exactly what's going to happen, but we do know there's a substantial likelihood for all the reasons that I incur, even if you assume that they recover a hundred percent of every dollar that they spend on cleanup in the expansion site, which is, I think, a very unrealistic prospect. Even if that were true, they would still be out. I submit likely seven figures that they will spend on the circle litigation. Again, that's money that they themselves say they don't have and aren't authorized to spend under the agreement. So how are they not in a position where they have to request from the bankruptcy court? How is it conceivable? Okay, Mr. Weigel, I think we have that argument. So let me just ask if any of my colleagues have further questions? No. If not, then let's hear from the other appellee. Ms. Rowe. Good morning, your honor. May it please the court, Kristin Carter Rowe on behalf of Appellee General Electric Company. I will be addressing Racer Trust's legal capacity to bring this action, as well as other issues that were before the district court. As has been discussed, the district court agreed that Racer Trust lacked the legal capacity to sue in its own name, and that only its trustee, a limited liability company named Ethlet, has the legal capacity to serve as a plaintiff in this case. Okay, so Ms. Rowe, let's suppose we agree with you and the prejudice under the statute of limitations, or does that mean back to the district court and make them amend, if they can, if Ethlet will join the suit? Why isn't that the right answer? Well, there's two options. One would be yes, the court could dismiss the action, or the court could remand and Ethlet would have to join the suit. The question is, why is it not more just if there is a technical issue with respect to who is the party in interest? Obviously, Racer wouldn't be here if the trustee hadn't approved their being here. If the trustee doesn't want this action brought, the trustee could have prevented it. So presumably, the trustee does want to join. We're told that the trustee is willing to join. So let's just solve this problem and move on to the other more complicated issues that are before us. Why shouldn't we do that? Well, we agree that this is normally a terrible issue. We highlight the capacity issue because of the unique circumstances of this case. When the defendants move to dismiss the lack of... I understand why you would tactically want to highlight this issue because it dovetails with some of the other issues that are being raised about the bankruptcy court and so on. Why would it be more just to end this case because the wrong party was listed in the caption when the right party is totally aligned with the wrong party and is offering, apparently, to resolve the problem? Why is it just to throw this entire case out because arguably some lawyer made a mistake in making this racer versus rather than racer and epaulette or just epaulette versus? Because in the usual circumstance, when a party moves to dismiss the lack of capacity, the response is typically a cross motion to name the trustee in the caption or the submission of an affidavit by the trustee confirming that the trustee supports the action and is ready and expanded territory remediation and into this lawsuit. Until the reply brief on appeal, we never heard that the trustee supported this action and was fully informed of it. Why do we care about this? We care because we want to make sure the trustee has authorized the action and will be bound by any decision in this case. Fine, but if it is and we've heard now that it is, if they don't follow through, then the district court gets to dismiss. I don't think that's going to happen. You're telling us now that it's just because they, to dismiss because they made two mistakes, the initial one, and then they didn't take the usual step of cross moving. But I just don't see why, you know, with all the other issues in this case that, you know, this is the way out of it. Well, I agree that even if this court were to dismiss for lack of capacity or to remand on that issue, the critical issue is the prudential rightness issue. And we do think that ultimately that issue needs to be resolved regardless of how the lack of capacity issue is. Okay, so then what's the other issue you wanted to raise here today? I wanted to, the district court also held that the appellant circle claim for OU2 response costs was untimely. And as recently confirmed by the Supreme Court in Guam, a party that has resolved its circle liability to the government can seek contribution from other potentially responsible parties under section 113, but must do so within three years of entry of a judicially approved settlement. And here, that judicially approved settlement was the settlement agreement entered by the bankruptcy court in March of 2011. So what you're saying is the district court erred because it dismissed without prejudice. It should have dismissed with prejudice. Well, we believe there would have been grounds for it to dismiss without prejudice, but the court obviously didn't do that. It dismissed without prejudice on prudential rightness grounds. But you're, excuse me, but the argument that you are now pressing, the decretal language from this court would have to be, would it not, that on remand, the district court is directed to dismiss this claim with prejudice because of dismissal with prejudice would have been appropriate. No, no, I'm asking, excuse me, I'm asking you what you are asking us to do by raising this issue. We are asking this court to affirm the district court's decision that the 2011 agreement triggered the three-year statute of limitations under SERPA and time barred section 113 claims. And, but, but, but is that not asking us to direct dismissal with prejudice, which is not what the district court did? I believe, yes, that is correct. And is that not something that would require you to have cross appealed because you are asking for more relief from us than the district court gave you? Asking for dismissal with prejudice would be different than what the district court ordered, but, but asking this court to agree that that 2011 agreement did trigger the 113 claim is in conformance with what the lower court did. So the court could also just dismiss without prejudice in conformance with that lower court decision. Ms. Rowe, I think you said a moment ago that you agreed with the argument that the 113 claims are correct. Do you think that they are both unright and also time barred? Well, let me clarify. I apologize. Let me, let me clarify. The 113 claims for OU2 are time barred. With regard to the expanded territory, we believe they are prudentially unright. And, and just to clarify what the district court did. So the district court analyzed the statute of limitations issue in the context of discussing prudential rightness. And the district, because the district court had to determine, is there some hardship here to me dismissing this case without prejudice? So the court said, look, the, the, the Palancirpa claims for the expanded territory are either time barred because of this 2011 agreement from the bankruptcy court. Well, didn't the district court say that with respect to, with respect to all of the claims, the district court basically said these claims are either controlled by the earlier agreement or there's, has been no agreement yet. And so therefore the clock hasn't started ticking. Isn't that, isn't that what the district court said? At least with respect to 113. The district court did say that with regard to the expanded territory. On page 27 of the district court's decision, it held both plaintiff's circular liabilities for the plant, which is OU1 and its environs, which is OU2 were fully resolved by the 2011 agreement. What the district court didn't rule on was whether or not, um, the, the claims for the expanded territory. So when we're talking about OU2, are you talking about the one acre or are you talking about OU2 apart from the one acre? Or are you talking about, uh, the whole thing together? What, what is the liability that you're saying is time barred? The one acre is only part of OU2. The, if you look at paragraph 63 of the 2011 agreement, it actually defines the offsite portion of the Inland Fisher Guide site. And it defines it as the property extended, extending from the facility property boundaries, uh, down gradient to the route 11. Okay. So when Mr. Littleton was arguing, he said that he did not think that he agreed with the district court that they did not have a 113 claim. So if, uh, if that view were to prevail, then this time barred question, uh, wouldn't matter whether it's a claim or it's time barred, there's no 113 claim, right? With regard to the expanded territory, respectfully, the district court did not decide the issue of the statute of limitations with regard to any... So you're not saying that the statute of limitation applies to the expanded territory. You're saying it only would apply to OU2. No, I, I'm saying that the district court didn't decide the issue. Below, before the district court, the defendants had argued that all the claims, including for the expanded territory, were time barred. And there were multiple arguments that were raised. One of which was the 2011 agreement triggering the three-year statute of limitations. The district court only partially addressed, didn't address the other statute of limitations issues that the defendants had raised, and only addressed whether or not the two, it only, um, determined that the 2011 agreement time barred any OU1, OU2 claims, but we don't know whether either the clock has already run for the, uh, for the expanded territory. Excuse me, Ms. Rowe, I hate to interrupt, but we review judgments, not opinions, right? And what the judgment here was, is that the case is dismissed without prejudice because it is prudentially unright. It may have said all kinds of things or made all kinds of assumptions or even rulings along the way to get to that conclusion. But if that conclusion is right, then we affirm and we don't have to reach any of these other issues. If that conclusion is wrong, then we remand to the district court for further proceedings. Why is there anything else that we ought to decide on this appeal, other than whether the district court's judgment was correct in dismissing this case as prudentially unright? We believe that this court certainly should affirm that the case is, uh, prudentially unright and, and affirm the dismissal without prejudice. Uh, and we offered the statute of limitations, uh, argument, uh, just as confirming that there was no hardship to the appellant, uh, because of that dismissal. In other words, the dismissal is not posing a hardship to the appellant. Now, I heard Mr. Littleton argue that the clock is running on a 107 claim. First of all, we don't know if there's a viable 107 claim because the district court didn't reach that, the issue of whether the expanded territory was exactly right. Of course, the district court didn't reach that because it dismissed the case, uh, without prejudice as prudentially unright. Uh, and if that was right, we don't need to do anything else. If that was wrong though, why would it be prudent or within our jurisdiction even to go off, uh, saying, and by the way, district court, while you're at it, uh, why don't you dismiss this piece on the statute of limitations and that piece for some other reason, uh, or maybe as Mr. Littleton suggested at some point, we should say that, uh, certain arguments that the, uh, certain defendants might raise later on about what's the proper way to proceed or not, uh, should be decided in his favor. Why do we do any of that? The district court did one thing. It's either right and the case is over for now, uh, or it's wrong and it's back to the district court to sort out whatever merits issues exist. Why, why is, why am I wrong about that? Um, I don't think you're wrong, Your Honor. And I, I do think, uh, that this court could affirm, uh, the prudential unrightness decision and, and, and dismiss the case without prejudice. And it does not need to in the context of doing that, uh, make any further determinations other than to the extent that appellants are arguing the hardship issue. And so the statute of limitations issue just bears on that hardship issue. But at the end of the day, you are correct. That is the correct analysis. Okay. Uh, Ms. Rowe, uh, if any of my colleagues don't, if my colleagues don't have further questions, um, thank you very much. And we will turn back to Mr. Littleton for rebuttal. Thank you, Your Honor. Um, so I want to explain what's going on with the bankruptcy court and why that rationale for prudential rightness decision that the defendants have raised on appeal is just not, it's not viable. So the plaintiffs seem, or excuse me, the defendants seem to be suggesting that there's this, uh, somebody, we could get money from somebody else in bankruptcy court. And so we should go that route, uh, instead of, instead of suing them to recover the costs we've already incurred. But the only possible resolution in the bankruptcy court, the most favorable resolution for us would be to simply, as an accounting matter, transfer money from one fund that we own to another fund that we own. So this, there's a cushion fund that the, that counsel referenced that's available for all 89 properties across the country, former General Motors properties, um, for overage, uh, unexpected costs of cleanup. But if we take that three and a half million dollars, um, if the bankruptcy court says we can take that three and a half million dollars out of the cushion fund, then we're just robbing Peter to pay Paul. It means three and a half million dollars less somewhere else. The only way that we can actually get money that we don't have already to recover our three and a half million dollars of costs is coming after defendants. Nothing EPA. Well, what about, what about the 90? What about the wouldn't, if you wanted to spend money on that? So you had said that, uh, even though you don't think you're required to do it, you're going to cooperate with the authorities and spend money on the expanded territory. Do you not need authorization to take money from another pot? Or maybe even if you're talking about $90 million to get additional monies in order to complete that. We, we would your honor. And you know, we have our, our goal, frankly, is to not to spend the $90 million to get a judgment. Well, I understand. I understand, but we're talking about what might happen. Uh, if this case were not decided now. So what would you do to spend that money? If you're saying that you are cooperating voluntarily with the authorities as Mr. Weigel, right, that you would have to go to the bankruptcy court sooner or later to get authorization, to spend money on cleaning up the expanded territory. So if we're just talking about future expenses, we, we are not going to have the money in our current fund allocated for this particular site to do, you know, $90 million of work because we know we have cleanup responsibilities in the actual GM plant itself. And this would just, this would dwarf that number. So, so if that, if, if we actually were required and nobody is requiring us to do this at this point, and I want to make that clear, if we were actually required to, to do these future, to incur these future response costs, and we went to the bankruptcy court and we fought that out, the bankruptcy court could decide to transfer money again, from our, our own money from the Cushion Fund to the, to the location of this site. We don't think that's appropriate. So if indeed you, we don't think you don't, I'm sorry, you don't think it's appropriate to transfer money from the Cushion Fund? No, we don't, because we don't think we're responsible for cleaning up all that, all that waste. Right. So, so if, so you had said before that you were going to cooperate with the authorities and do the cleanup of the expansion site. You actually can't do that because you don't have the funds to do it. So you will have to go to the bankruptcy court sooner or later if you intend to engage in that kind of cleanup, right? So with respect to what we're doing right now, so we already incurred the $3.5 million. Which again, we can't get that back. And there's no way that the bankruptcy court can get us that money back from some, the money, the money that the bankruptcy court is dealing with. It's not like it grows on trees. It's our money. And it's just a question of whether it's spent for, for this purpose or another purpose. But paragraph 98 of the settlement agreement expressly envisions that when we spend money, whether it's from the Cushion Fund or specific allocations, whenever we spend money and we can recover those costs under CERCLA, we're supposed to do that. And that's what we're doing here. And all of the, all of the suggestion that, you know, the defendants who, as they acknowledged, are non-parties to the agreement, they have no rights under the agreement, as is clear in paragraph 104. Arguments about whether our expenditures or ultraviarates are irrelevant, because that's not a defense district liability under CERCLA. Section 107B provides an exclusive list of those defenses. Well, it's not, it's not a defense to, it's not a defense, it's not a defense to liability under CERCLA, but maybe it helps us understand the likelihood of a future event that might obviate the need for litigation. So if you're going to have to go back to the bankruptcy court, should you engage in a cleanup of the expanded territory? And the bankruptcy court at that hearing would say, well, actually, you're not obligated to engage in this cleanup. And because of the nature of race or ethnicity, you're therefore not authorized to do it. Wouldn't that obviate the need for litigation to a large extent? So we're not going, Your Honor, we're not going to have to go to the bankruptcy court if the district court properly exercises its jurisdiction to both declare liability for past costs, and as required by Section 113G2, to actually issue a declaratory judgment. It's not optional as to future response costs. And so it's just a question of, you know, the district court had jurisdiction, it acknowledged that, and I haven't heard an argument to the contrary. The question is just whether there's hardship to us in dismissing our claim. And the only response I heard from defendants on the statute of limitations is, well, maybe the Brookline Road action was a remedial instead of a removal action. So we have one more year left on the statute of limitations. That's a fact issue, Your Honor. The defendants haven't suggested one way or the other what position they're going to take on that. It's not very comforting to know that maybe the statute of limitations wouldn't have run. Do you agree with the general argument that RACER is not entitled to voluntarily just take up additional cleanup actions? You're obligated to do what the 2011 agreement says that you're supposed to do? So paragraph 101 of the 2011 agreement, which is on page 663 of the appendix, and article 2.7.2 of the agreement that actually created the trust, and that's at page 706, authorize the trust to perform work as required by consent orders. And under article 4.8.1 of the trust agreement, which is page 719 of the appendix, the trust may take any action it deems in good faith to be reasonably necessary or proper for the conservation or protection of its assets. So our two choices, again, were we could perform the work at Brookline Road, as the state was saying, that's required not under the 2011 agreement, but under the consent order. You could read that language either way. We conservatively read it to say, okay, we will do this work recognizing that we have a remedy to recover all our costs and conserve and protect our assets from the defendants. Otherwise, we would have to, if we were wrong about our reading of the 2015 agreement, we'd be in violation of state law and have to incur civil penalties for that. So we think we were authorized under that provision, which is, again, present both in the 2011 settlement agreement and in the agreement. But if it turned out that you got a resolution on the question of whether you're obligated to clean up the expanded territory pursuant to an earlier consent decree, and it turned out that you were not obligated, then you would agree that you would be neither obligated nor even authorized to engage in the cleanup of the expanded territory. In the future, correct. But with respect to past costs, we'd be out of luck. The only way we can get our past costs back is through a decision. What might happen here, if you were to recover under 107 against the defendants here for your past costs and get a declaratory judgment that they're liable for future costs, then you would never get that determination because you'd have access to funds from the other parties and then there'd be a cleanup of the expanded territory without ever resulting that issue. Exactly. And nothing in CERCLA requires us to take, or in the bankruptcy or its settlement agreement, requires us to go to the bankruptcy court with a question like this. Again, the settlement agreement expressly envisions at paragraph 98 that we will sue to recover our contribution and cost recovery claims, just as we're doing here. Nothing in section 107 has a bankruptcy court exhaustion requirement. This is the only time we're aware of any court in the country ever dismissing either a CERCLA section 107 or section 113. I understand, but is there a reason why you would not want a resolution of that question as to whether you are actually obligated to do the cleanup of the expanded territory? We absolutely want it, Your Honor, and the district court is required to give it to us at the terms of section 113 G2. Oh, you're saying you would get it from the district court and not from the bankruptcy court? Exactly, Your Honor. Well, can you get it, Mr. Wilton, from the district court without the presence of the other parties to the consent decree or the settlement agreement? Yes, Your Honor, because the question of whether defendants are liable for cleanup is completely independent of whatever the settlement agreement says. As Judge Menachie's questions to opposing counsel suggested, if this were GM, if we were GM and not the trust, they wouldn't have an argument. The only reason they're trying to argue this is they're saying we're this unique entity that somehow can just keep generating more money and maybe the trust is going rogue. None of that is supported by the record. I've explained why. Maybe I was unclear in my question. What I thought you were discussing with Judge Menachie is whether you could get a ruling from the district court that says you are not obligated to do that cleanup. The parties in this case are not the only parties who are affected by that issue. I guess you're saying if other parties want in, they need to intervene because somebody else... Right. EPA could intervene as a plaintiff if they wanted. They could go after the defendants. There's no allegation that US EPA is a defendant liable for the response costs, but what section 113 says is in any cost recovery action, the court shall enter a declaratory judgment on liability for response costs or damages. We don't think, with respect to the expanded territory, that we're responsible at all. We think that we have named the defendants that are jointly and severally liable. If there are other defendants that we haven't named that also have liability, then that's irrelevant because CERCLA is a strict liability statute that imposes joint and several liability. The court can make that adjudication of defendant liability here. But if you're not responsible at all, the way the 107 claim works is that you get reimbursement for your outlays, right? Then if the district court were to decide that you're not responsible for any future cleanup of the expanded territory, would that mean you're just getting reimbursement from what you've already spent and then going forward there wouldn't be any expenditures from you and therefore no more cleanup of that area until there's a new consent decree? Well, the defendants that would be declared liable by the district court would be responsible for that cleanup. You're right that we would not be. What you described, Your Honor, is exactly the judgment that we're hoping to obtain from the district court. Well, but that judgment wouldn't bind the EPA or New York State from saying that you are responsible. Am I wrong about that? You are, Your Honor, and the reason is that Section 113 expressly provides that the declaratory judgment on liability for response costs or damages will be binding on any subsequent action or actions, including one brought by US EPA or the state of New York. If they thought you were responsible, it would behoove them to intervene in this proceeding and play a part in it. Absolutely. We would welcome that. So this proceeding is a way in which all of the relevant parties could be brought into the case. Is that right? Yes. While going to the bankruptcy court would not be a way necessarily of getting everybody in because it wouldn't get the other potentially liable parties, that is the defendants that you have now sued, into that proceeding. Exactly, and it wouldn't say anything about who was ultimately responsible for the costs. That's not something that the bankruptcy court has jurisdiction to determine. But on the other hand, that means that the bank district court in this case could reach a determination as to the scope of the earlier agreements that's different from the bankruptcy, from what the bankruptcy court would decide. So with respect, we don't think that ultimately the scope of the 2011 agreement is relevant here because first of all, our section 107 claim- No, I understand. There's an argument to which- Yeah, go ahead. You can finish the answer. Well, with respect to the section 107 claim, we've stated a claim and it's not claims about what the trust could and could not do under the 2011 agreement are not viable defenses. So it's not relevant there. With respect to our section 113 claim, that's predicated not on the 2011 agreement, but on the 2015 consent order, which the bankruptcy court has no jurisdiction to interpret. So it's a red herring here. Whether we could choose or EPA or the state of New York could choose, and as has been noted, nobody's going to the bankruptcy court to resolve this. And the reason is that this should be resolved in the district court with litigation involving all the potentially responsible parties. The goal of CERCLA is to get cleanup done as quickly as possible and sort out liability later. We've started the cleanup back in- Well, you're not intending to go to the bankruptcy court. You're not intending to go to the bankruptcy court now, but my understanding is that if in fact the district court dismissal of your claims is potentially unripe stand and you still wanted to expend further funds in the expanded territory, you would have to go to the bankruptcy court. Right. If we were required to, if EPA said, you're required to enter this order, conduct this, we would go ultimately and try to get a declaratory judgment on that question. Only if EPA said you were required to. So at this point, you're cooperating voluntarily with the EPA, but if you did not have access to additional funds, you would only be able to do what the EPA required you to do. And if they required you to do something, you'd have to go to the bankruptcy court. So that's how it would work. Right. And we're not cleaning up more of the expanded territory now, right? We've stopped. We did that one piece in Brookline Road because of the public health emergency, but we're not continuing to clean it up. We don't think we're responsible for it. EPA hasn't come in and held a gun to our head and said, you had to clean it up. We're hoping that never happens. And if we go to the district court and the district court says, as it must, what liability is for all the parties, the district court can get us off the hook altogether. And so we never have to deal with this again. If it comes to the point... If they come to you and tell you that you must clean it up, how can you do it if you don't have any money? Right. Then we have to go to the bankruptcy court, but that's completely speculative, Your Honor. The bankruptcy court could say, no, there's no money for this. Right. They absolutely could, Your Honor. But it's completely speculative whether that happens. And it's certainly speculative enough that it's not substantially likely, right? I mean, we've been sitting here for five years since this 2016 cleanup and neither EPA nor New York has run to the bankruptcy court to try to make that argument. Well, EPA just in the last... Decided it took over as a lead agency and said that they expected a new consent decree, right? So there is some indication that maybe there will be some action, no? They say, I mean, in the letter that we submitted last month in the 28-J, it's extraordinarily vague, right? It says we haven't decided what we're going to do. We're still in the early stages. This could take years, right? In the meantime, we're out this money. We can only get it back through this litigation. And if this litigation is resolved, all of these issues are going to fall out and it's going to be quite clear after that point who's responsible, what, if anything, we're responsible for. And then we can go from there and go to the bankruptcy court if that's necessary. We don't think it will be. So in closing, Your Honor, I would just say at bottom, this suit seeks retrospective relief based on past events that fix the elements of our defense that might be available. It's as ripe as it will ever be. And the district court's judgment should be reversed. Thank you, Your Honor. Okay. Thank you, Mr. Littleton. The case is submitted. And because that is the only case in our argument calendar today, we are adjourned. Court is adjourned.